UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>       Plaintiff,<br><br>       v.<br><br>M&T FINANCIAL GROUP, a corporation, also d/b/a StuDebt, Student Debt Relief Group, SDRG, Student Loan Relief Counselors, SLRC, and Capital Advocates Group,<br><br>AMERICAN COUNSELING CENTER CORP., a corporation, also d/b/a StuDebt, Student Debt Relief Group, SDRG, Student Loan Relief Counselors, SLRC, and Capital Advocates Group, and<br><br>SALAR TAHOUR, individually, and as an officer of M&T FINANCIAL GROUP and AMERICAN COUNSELING CENTER CORP.,<br><br>       Defendants. | Case No. CV17-6855-ODW(PLAx)<br><br>Stipulated Preliminary Injunction |

Plaintiff, the Federal Trade Commission ("FTC" or the "Commission") and Defendants M&T Financial Group, American Counseling Center Corp., and Salar Tahour ("Defendants") have stipulated to entry of this Stipulated Preliminary Injunction ("Order"). This court, having considered the parties' Stipulation (ECF No. 36), and the other filings in this case, and for other cause appearing, hereby orders that:

## **FINDINGS OF FACT**

By stipulation of the parties, the Court finds as follows:

1

1.     The FTC and Defendants have stipulated and agreed to the entry of this preliminary injunction order without any admission of wrongdoing or violation of law, and without a finding by the Court of law or fact other than stated below;

2.     This Court has jurisdiction over the subject matter of this case and over the parties;

3.     Venue in this district is proper;

4.     The FTC asserts there is good cause to believe that Defendants have engaged in and are likely to engage in acts or practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, and that the Plaintiff is therefore likely to prevail on the merits of this action;

4.     The FTC asserts there is good cause to believe that immediate and irreparable harm will result from Defendants' ongoing violations of Section 5(a) of the FTC Act and the TSR unless Defendants are restrained and enjoined by order of this Court;

5.     The FTC asserts there is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers, including monetary restitution, rescission, and disgorgement of ill-gotten gains, will occur from the transfer, dissipation, or concealment by Defendants of their assets or business records unless Defendants are immediately restrained and enjoined by order of this Court, and therefore, the FTC asserts, there is good cause for an asset freeze and continuing the appointment the Receiver over the Receivership Defendants, as that term is defined herein;

6.     The FTC asserts that the entry of a preliminary injunction is in the public interest; and

7.     The FTC is an independent agency of the United States of America and no security is required of any agency of the United States for the issuance of a preliminary injunction.  Fed. R. Civ. P. 65(c).

2

## **DEFINITIONS**

For the purpose of this Order , the following definitions shall apply:

1.     "**Asset**" or "**Assets**" means any legal or equitable interest in, right to, or claim to, any real or personal property, including "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," or "notes" (as these terms are defined in the Uniform Commercial Code), lines of credit, chattels, leaseholds, contracts, mail or other deliveries, shares of stock, lists of consumer names, accounts, credits, premises, receivables, funds, and all cash, wherever located.

2.     "**Commission**" or "**FTC**" means the Federal Trade Commission.

3.     "**Corporate Defendants**" means M&T Financial Group, also d/b/a StuDebt, Student Debt Relief Group, SDRG, Student Loan Relief Counselors, SLRC, Capital Advocates Group, Student Loan Financial Aid, and SLFAid, and American Counseling Center Corp., also d/b/a StuDebt, Student Debt Relief Group, SDRG, Student Loan Relief Counselors, SLRC, Capital Advocates Group, Student Loan Financial Aid, and SLFAid, and their successors and assigns, as well as any subsidiaries, and any fictitious business entities or business names created or used by these entities, or any of them.

4.     "**Debt Relief Service**" means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector.

5.     "**Defendant(s)**" means the Individual Defendant and the Corporate Defendants, individually, collectively, or in any combination.

6.     "**Document(s)**" is equal in scope and synonymous in meaning to the usage of the term in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer

3

records, and any other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

7.      "**Financial Institution**" means any bank, savings and loan institution, credit union, or any financial depository of any kind, including any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

8.      "**Individual Defendant**" means Salar Tahour, by whatever names he may be known.

9.      "**Person**" means a natural person, organization, or other legal entity, including a corporation, limited liability company, partnership, sole proprietorship, association, cooperative, or any other group or combination acting as an entity.

10.     "**Plaintiff**" means the Federal Trade Commission.

11.     "**Receiver**" or "**Permanent Receiver**" means the permanent receiver appointed in Section VIII of this Order and any deputy receivers that shall be named by the permanent receiver.

12.     "**Receivership Defendants**" means Defendants M&T Financial Group, also d/b/a StuDebt, Student Debt Relief Group, SDRG, Student Loan Relief Counselors, SLRC, Capital Advocates Group, Student Loan Financial Aid, SLFAid, and American Counseling Center Corp., also d/b/a StuDebt, Student Debt Relief Group, SDRG, Student Loan Relief Counselors, SLRC, Capital Advocates Group, Student Loan Financial Aid, and SLFAid, and their successors and assigns, as well as any subsidiaries, affiliates, divisions, or sales or customer service operations, and any fictitious business entities or business names created or used by these entities.

13.     "**Seller**" means any person who, in connection with a Telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or

4

services to the customer in exchange for consideration, whether or not such person is under the jurisdiction of the Commission.

14.    "**Telemarketer**" means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor.

15.    "**Telemarketing**" means any plan, program, or campaign that is conducted to induce the purchase of goods or services or a charitable contribution by use of one or more telephones.

16.    "**Telemarketing Sales Rule**" or "**TSR**" means the Telemarketing Sales Rule set forth in 16 C.F.R. Part 310.

17.    "**Temporary Restraining Order**" or "**TRO**" means the *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of a Receiver, Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue entered by this Court on September 19, 2017.  (ECF No. 18).

## I.

## <u>PROHIBITED BUSINESS ACTIVITIES</u>

**IT IS ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the telemarketing, advertising, marketing, promoting, offering for sale, sale, or provision of student loan debt relief services, are restrained and enjoined from:

A.    Misrepresenting, or assisting others in misrepresenting, expressly or by implication, any material fact, including that:

1.    Defendants are affiliated or work directly with, or endorsed or sponsored by, the government or the Department of Education;

2.    Defendants will enroll consumers in a student loan repayment or forgiveness program that will have their monthly payments reduced to a fixed amount for a fixed number of years;

5

3. The government repayment or forgiveness program requires consumers to pay a fee to enroll;

4. Consumers' monthly payments to Defendants will be applied toward consumers' student loans; and

5. Defendants will assume responsibility for the servicing of consumers' student loans;

B. Making, or assisting others in making, any representation, expressly or by implication, about the benefits, performance, or efficacy of any product or service, unless the representation is non-misleading and, at the time such representation is made, Defendants possess and rely upon competent and reliable evidence that is sufficient in quality and quantity based on standards generally accepted in the relevant fields, when considered in light of the entire body of relevant and reliable evidence, to substantiate that the representation is true; and

C. Requesting or receiving payment of any fee or consideration for debt relief services until and unless:

1. Defendants have renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer;

2. The customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor or debt collector; and

3. To the extent that debts enrolled in a service are renegotiated, settled, reduced, or otherwise altered individually, the fee or consideration either:

a. Bears the same proportional relationship to the total fee for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount. The individual debt amount and the entire debt amount are those owed at the time the debt was enrolled

in the service; or

            b.  Is a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration.  The percentage charged cannot change from one individual debt to another.  The amount saved is the difference between the amount owed at the time the debt was enrolled in the service and the amount actually paid to satisfy the debt;

      D.    Initiating or causing others to initiate outbound telephone calls to consumers who have registered their telephone numbers on the National Do Not Call Registry; and

      E.    Initiating or causing others to initiate outbound telephone calls to telephone numbers within a given area code without first, either directly or through another person, paying the required annual fee for access to the telephone numbers within that area code that are included in the National Do Not Call Registry.

## II.

## <u>SUSPENSION OF COLLECTION ON ACCOUNTS</u>

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are restrained and enjoined from attempting to collect, collecting, or assigning any right to collect payment for Defendants' debt relief products or services.

## III.

## <u>ASSET FREEZE</u>

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, except as provided herein, as stipulated by the parties, or as directed by further order of the Court, are restrained and enjoined from:

A.     Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing of any funds, real or personal property, accounts, contracts, shares of stock, lists of consumer names, or other assets, or any interest therein, wherever located, including outside the United States, that are:

1.     Owned, controlled or held by, in whole or in part, for the benefit of, or subject to access by, or belonging to, any Defendant;

2.     In the actual or constructive possession of any Defendant; or

3.     In the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, or belonging to, any other corporation, partnership, trust, or any other entity directly or indirectly owned, managed, or controlled by, or under common control with, any Defendant, including any assets held by or for any Defendant in any account at any bank or savings and loan institution, or with any credit card processing agent, automated clearing house processor, network transaction processor, bank debit processing agent, customer service agent, commercial mail receiving agency, or mail holding or forwarding company, or any credit union, retirement fund custodian, money market or mutual fund, storage company, trustee, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, or other financial institution or depository of any kind, either within or outside the territorial United States;

B.     Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Defendant, or subject to access by any Defendant or under any Defendant's control, without providing Plaintiff prior notice and an opportunity to inspect the contents in order to determine that they contain no assets covered by this Section;

C.      Cashing any checks or depositing or processing any payments from customers of Defendants;

D.      Incurring charges or cash advances on any credit card issued in the name, singly or jointly, of any Defendant; or

E.      Incurring liens or encumbrances on real property, personal property, or other assets in the name, singly or jointly, of any Defendant or of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant.

Notwithstanding the asset freeze provisions of Section III.A through E above, and subject to prior written agreement with Plaintiff, Individual Defendant may, upon compliance with Section V (Financial Statements) *infra*, pay from their individual personal funds reasonable, usual, ordinary, and necessary living expenses.

The funds, property, and assets affected by this Section shall include: (1) all assets of the Defendants as of the time this Order is entered; and (2) for assets obtained after the time this Order is entered, those assets of the Defendants that are derived, directly or indirectly, from the Defendants' activities related to any activity that is the subject of Plaintiff's Complaint or prohibited by the TRO, including  any activity related to Telemarketing or the marketing or sale of any student loan debt relief product or service.

**IV.**

**DUTIES OF THIRD PARTIES HOLDING DEFENDANTS' ASSETS**

**IT IS FURTHER ORDERED** that any financial institution, business entity, or person maintaining or having custody or control of any account or other asset of any Defendant, or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with any Defendant, which is served with a copy of this Order, or otherwise has actual or constructive knowledge of this Order, shall:

A.   Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation, conversion, sale, liquidation, or other disposal of any of the assets, funds, documents, or other property held by, or under its control:

1.   On behalf of, or for the benefit of, any Defendant or any other party subject to Section III above;

2.   In any account maintained in the name of, or for the benefit of, or subject to withdrawal by, any Defendant or other party subject to Section III above; and

3.   That are subject to access or use by, or under the signatory power of, any Defendant or other party subject to Section III above;

B.   Deny Defendants access to any safe deposit boxes or storage facilities that are either:

1.   Titled in the name, individually or jointly, of any Defendant, or other party subject to Section III above; or

2.   Subject to access by any Defendant or other party subject to Section III above;

C.   Provide Plaintiff, within five (5) days of the date of service of this Order, a sworn statement setting forth:

1.   The identification number of each account or asset titled in the name, individually or jointly, of any Defendant, or held on behalf of, or for the benefit of, any Defendant or other party subject to Section III above, including all trust accounts managed on behalf of any Defendant or subject to any Defendant's control;

2.   The balance of each such account, or a description of the nature and value of such asset;

3.   The identification and location of any safe deposit box, commercial mail box, or storage facility that is either titled in the name,

10

individually or jointly, of any Defendant, or is otherwise subject to access or control by any Defendant or other party subject to Section III above, whether in whole or in part; and

        4.    If the account, safe deposit box, storage facility, or other asset has been closed or removed, the date closed or removed and the balance on said date;

D.    Within five (5) days of a request from Plaintiff, provide Plaintiff with copies of all records or other documents pertaining to each such account or asset, including originals or copies of account applications, account statements, corporate resolutions, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; and

E.    Plaintiff may properly serve this Order on any financial or brokerage institution, business entity or person that holds, controls or maintains custody of any account or asset of any Defendant or has held, controlled or maintained custody of any account or asset of any Defendant at any time since January 2014, by facsimile transmission, hand delivery or overnight carrier.  This Section shall apply to existing accounts and assets, assets deposited or accounts opened after the effective date of this Order, and any accounts or assets maintained, held or controlled three years prior to the effective date of this Order.  This Section shall not prohibit transfers in accordance with any provision of this Order, any further order of the Court, or by written agreement of the parties.

## V.

## FINANCIAL STATEMENTS

**IT IS FURTHER ORDERED** that, unless previously submitted in full compliance with the TRO, each Defendant shall serve upon counsel for Plaintiff, no later than five (5) business days after entry of this Order or October 11, 2017, whichever is later, a completed financial statement accurate as of the date of entry

of this Order, on the forms served on Defendants with the TRO for the Individual Defendant and for Corporate Defendants, as the case may be, signed under penalty of perjury.

The financial statements shall include assets held outside the territory of the United States, shall be accurate as of the date of the entry of this Order, and shall be verified under oath. Defendants shall attach to these completed financial statements copies of all local, state, provincial, and federal income and property tax returns, with attachments and schedules, as called for by the instructions to the financial statements.

## VI.

## MAINTAIN RECORDS AND REPORT NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are restrained and enjoined from:

A. Failing to make and keep books, records, accounts, bank statements, current accountants' reports, general ledgers, general journals, cash receipts ledgers, cash disbursements ledgers and source documents, documents indicating title to real or personal property, and any other data which, in reasonable detail, accurately and fairly reflect the incomes, disbursements, transactions, dispositions, and uses of Defendants' assets;

B. Destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents, including electronically stored materials, that relate in any way to the business practices or business or personal finances of Defendants; to the business practices or finances of entities directly or indirectly under the control of Defendants; or to the business practices or finances of entities directly or indirectly under common control with any other Defendant; and

C.     Creating, operating, or exercising any control over any new business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship or corporation, without first providing Plaintiff with a written statement disclosing: (1) the name of the business entity; (2) the address, telephone number, e-mail address, and website address of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

## VII.

## PROHIBITION ON DISCLOSING CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, attorneys, and all other persons or entities in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are restrained and enjoined from:

A.     Selling, renting, leasing, transferring, or otherwise disclosing the name, address, birth date, telephone number, e-mail address, Social Security number, credit card number, bank account number, or other financial or identifying personal information of any person from whom or about whom any Defendant obtained such information in connection with activities alleged in Plaintiff's Complaint; and

B.     Benefiting from or using the name, address, birth date, telephone number, e-mail address, Social Security number, credit card number, bank account number, or other financial or identifying personal information of any person from whom or about whom any Defendant obtained such information in connection with activities alleged in Plaintiff's Complaint;

*Provided, however,* that Defendants may disclose such financial or identifying personal information to a law enforcement agency or as required by any law, regulation, or court order.

# VIII.

## PERMANENT RECEIVER

### A.     APPOINTMENT OF PERMANENT RECEIVER

**IT IS FURTHER ORDERED** that Robb Evans & Associates LLC is appointed Permanent Equity Receiver ("Receiver") for Receivership Defendants and any of their affiliates, subsidiaries, divisions, or sales or customer service operations, wherever located, with the full power of an equity receiver.   The Receiver shall be the agent of this Court, and solely the agent of this Court, in acting as Receiver under this Order.  The Receiver shall be accountable directly to this Court.  The Receiver shall comply with all Local Rules of this Court governing receivers.

### B.     RECEIVERSHIP DUTIES

**IT IS FURTHER ORDERED** that the Receiver is directed and authorized to accomplish the following:

1.     Assume full control of the Receivership Defendants by removing, as the Receiver deems necessary or advisable, any director, officer, employee, independent contractor, or agent of the Receivership Defendants, including the Individual Defendant, from control of, management of, or participation in, the affairs of the Receivership Defendants;

2.     Take exclusive custody, control, and possession of all assets and documents of, or in the possession, custody, or under the control of, the Receivership Defendants, wherever situated.  The Receiver shall have full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all assets and documents of the Receivership Defendants and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of the Receivership Defendants.  Provided, however, that the Receiver shall not attempt to collect any amount from a consumer, if the Receiver believes the

consumer was a victim of the unfair or deceptive acts or practices alleged in the Complaint in this matter;

3.     Use any means necessary to take possession of and to secure all areas of the business premises of the Receivership Defendants.  Such steps may include the following as the Receiver deems necessary or advisable: (a) serving this Order; (b) completing a written inventory of all receivership assets; (c) obtaining pertinent information from all employees and other agents of the Receivership Defendants, including the name, home address, Social Security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (d) videotaping all portions of the locations; (e) securing the locations by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at the locations; (f) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises documents or assets of the Receivership Defendants; and/or (g) employ the assistance of law enforcement officers as the Receiver deems necessary to implement the provisions of this Order;

4.     Conserve, hold, and manage all receivership assets, and perform all acts necessary or advisable to preserve the value of those assets, in order to prevent any irreparable loss, damage, or injury to consumers or to creditors of the Receivership Defendants, including obtaining an accounting of the assets and preventing transfer, withdrawal, or misapplication of assets, and including the authority to liquidate or close out any open securities or commodity futures positions of the Receivership Defendants;

5.     Enter into contracts and purchase insurance as advisable or necessary;

6.     Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants;

7.     Manage and administer the business of the Receivership Defendants until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

8.     Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

9.     Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.  The Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Receiver deems necessary or advisable to secure assets of the Receivership Defendants, such as rental payments;

10.     Determine and implement the manner in which the Receivership Defendants will comply with, and prevent violations of, this Order and all other applicable laws;

11.     Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal or foreign courts that the Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Defendants or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

12.     Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Receiver in

his or her role as Receiver, or against the Receivership Defendants that the Receiver deems necessary and advisable to preserve the assets of the Receivership Defendants or that the Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

13.    Continue and conduct the business of the Receivership Defendants in such manner, to such extent, and for such duration as the Receiver may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all; provided, however, that the continuation and conduct of the business shall be conditioned upon the Receiver's good faith determination that the business can be lawfully operated at a profit using the assets of the receivership estate;

14.    Issue subpoenas to obtain documents and records pertaining to the receivership, and conduct discovery in this action on behalf of the receivership estate;

15.    Open one or more bank accounts as designated depositories for funds of the Receivership Defendants.  The Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such an account;

16.    Maintain accurate records of all receipts and expenditures that he or she makes as Receiver;

17.    Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency, including Plaintiff; and

18.    File reports with the Court on a timely and reasonable basis.

## C.    COOPERATION WITH THE RECEIVER

**IT IS FURTHER ORDERED** that:

1.    Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them,

who receive actual notice of this Order, whether acting directly or indirectly, shall fully cooperate with and assist the Receiver.  This cooperation and assistance shall include, but not be limited to:

  a. Providing any information to the Receiver that the Receiver deems necessary to exercising the authority and discharging the responsibilities of the Receiver under this Order;

  b. Providing any password required to access any computer, electronic file, or telephonic data in any medium; or

  c. Advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Receiver.

  2. Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are restrained and enjoined from directly or indirectly:

  a. Transacting any of the business of the Receivership Defendants;

  b. Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any documents of the Receivership Defendants, including books, records, accounts, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations, electronically-stored records, or any other records of any kind or nature;

  c. Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants, or the Receiver;

  d. Excusing debts owed to the Receivership Defendants;

  e. Failing to notify the Receiver of any asset, including accounts, of the Receivership Defendants held in any name other than the name of

the Receivership Defendants, or by any person or entity other than the Receivership Defendants, or failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such assets;

f. Doing any act or refraining from any act whatsoever to interfere with the Receiver's taking custody, control, possession, or managing of the assets or documents subject to this receivership; or to harass or interfere with the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any Order of this Court; or

g. Filing, or causing to be filed, any petition on behalf of the Receivership Defendants for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, without prior permission from this Court.

**D.      DELIVERY OF RECEIVERSHIP PROPERTY**

**IT IS FURTHER ORDERED** that:

1. Immediately upon entry of this Order upon them, or within such period as may be permitted by the Receiver, Defendants or any other person or entity shall transfer or deliver possession, custody, and control of the following to the Receiver:

a. All assets of the Receivership Defendants, including assets subject to repatriation pursuant to Section X, *infra*;

b. All documents of the Receivership Defendants, including books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other papers;

c.    All assets belonging to members of the public now held by the Receivership Defendants; and

d.    All keys, codes, and passwords necessary to gain or to secure access to any assets or documents of the Receivership Defendants, including access to their business premises, means of communication, accounts, computer systems (onsite and remote), commercial and post office mail boxes, virtual offices, electronic data hosts, or other property.

2.    In the event any person or entity fails to deliver or transfer any receivership asset or document or otherwise fails to comply with any provision of this Section, the Receiver may file *ex parte* an Affidavit of Non-Compliance regarding the failure.  Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver.  The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the asset, document, or other thing and to deliver it to the Receiver.

**E.    TRANSFER OF FUNDS TO THE RECEIVER**

**IT IS FURTHER ORDERED** that, upon service of a copy of this Order, all financial institutions, finance companies, commercial lending companies, credit card processing agents or agents providing electronic funds transfer services or automated clearing house processing, brokerage houses, escrow agents, money market or mutual funds, title companies, commodity futures merchants, commodity trading companies, precious metal dealers, trustees, or other financial institutions or depositories of any kind, shall cooperate with all reasonable requests of the Receiver relating to implementation of this Order, including transferring funds at his or her direction and producing records related to the assets of the Receivership Defendants.

**F.      STAY OF ACTIONS**

**IT IS FURTHER ORDERED** that:

1.      Except by leave of this Court, during pendency of the receivership ordered herein, Defendants and all other persons and entities be and hereby are stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of, the Receivership Defendants, any of its subsidiaries, affiliates, partnerships, assets, documents, or the Receiver or the Receiver's duly authorized agents acting in their capacities as such, including the following actions:

a.      Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

b.      Accelerating the due date of any obligation or claimed obligation; filing, perfecting or enforcing any lien; taking or attempting to take possession, custody, or control of any asset; attempting to foreclose, forfeit, alter, or terminate any interest in any asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise, or setoff of any debt owing to the Receivership Defendants that arose before the date of this Order against any claim against the Receivership Defendants;

c.      Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not; or

d.      Doing any act or thing whatsoever to interfere with the Receiver taking custody, control, possession, or management of the assets or documents subject to this receivership, or to harass or interfere with the Receiver in any way, or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants.

2.     This Order does not stay:

a.     The commencement or continuation of a criminal action or proceeding;

b.     The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or

c.     The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

3.     Except as otherwise provided in this Order, all persons and entities in need of documentation from the Receiver shall in all instances first attempt to secure such information by submitting a formal written request to the Receiver, and, if such request has not been responded to within thirty (30) days of receipt by the Receiver, any such person or entity may thereafter seek an Order of this Court with regard to the relief requested.

**G.     COMPENSATION OF RECEIVER**

**IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by, or in the possession or control of, or which may be received by the Receivership Defendants.  The Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order.  The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

**H.    RECEIVER'S BOND**

**IT IS FURTHER ORDERED** that the bond in the sum of $10,000.00 previously filed with the Clerk of this Court shall remain in effect, conditioned that the Receiver will well and truly perform the duties of the office and abide by and perform all acts the Court directs.

**IX.**

**ACCESS TO BUSINESS PREMISES**

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, and the Receiver, shall allow Plaintiff, Plaintiff's representatives, agents, and assistants, as well as the Receivership Defendants' representatives, and the Individual Defendant, reasonable access to all of Receivership Defendants' business premises, or any other premises where the Receivership Defendants conduct business or customer service operations.  Such locations include 11766 Wilshire Boulevard, Suites 310 and 405, Los Angeles, California and 11400 West Olympic Boulevard, Suite 200, Los Angeles, California.

The purpose of this access shall be to inspect and copy any and all books, records, documents, accounts, and other property owned by, or in the possession of, the Receivership Defendants or their agents.  The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access. Plaintiff may remove materials from the Receivership Defendants' business premises to inspect, inventory, and copy such materials.  Plaintiff shall return materials so removed within five (5) business days of completing said inventory and copying.  Plaintiff's access to Defendants' documents pursuant to this Section shall not provide grounds for any Defendant to object to any subsequent request for documents served by Plaintiff.

# X.

## REPATRIATION OF ASSETS AND DOCUMENTS

**IT IS FURTHER ORDERED** that Defendants shall:

A.     Unless previously completed in full compliance with the TRO, within three (3) business days following entry of this Order, take such steps as are necessary to repatriate to the territory of the United States of America all documents and assets that are located outside such territory and are held by or for Defendants or are under Defendants' direct or indirect control, jointly, severally, or individually;

B.     Within three (3) business days following entry of this Order, provide Plaintiff with a full accounting of all documents and assets that are located outside of the territory of the United States of America or that have been transferred to the territory of the United States of America pursuant to Subsection A above and are held by or for any Defendant or are under any Defendant's direct or indirect control, jointly, severally, or individually, including the names and addresses of any foreign or domestic financial institution or other entity holding the documents and assets, along with the account numbers and balances;

C.     Hold and retain all such documents and assets and prevent any transfer, disposition, or dissipation whatsoever of any such documents or assets; and

D.     Within three (3) business days following entry of this Order, provide Plaintiff access to Defendants' records and documents held by financial institutions or other entities outside the territory of the United States of America, by signing and delivering to Plaintiff's counsel the Consent to Release of Financial Records attached to the TRO as Attachment A.

# XI.

## INTERFERENCE WITH REPATRIATION

**IT IS FURTHER ORDERED** that Defendants are restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by the preceding Section X of this Order, including:

A.     Sending any statement, letter, facsimile, e-mail or wire transmission, or telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement, until such time that assets have been fully repatriated pursuant to the preceding Section of this Order; and

B.     Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court Order, until such time as assets have been fully repatriated pursuant to the preceding Section of this Order.

# XII.

## EXPEDITED DISCOVERY

**IT IS FURTHER ORDERED** that pursuant to Federal Rules of Civil Procedure 30(a), 31(a), 34, and 45, and notwithstanding the provisions of Federal Rules of Civil Procedure 26(d) and (f), 30(a)(2)(A), and 31(a)(2)(A), the parties are granted leave, at any time after entry of this Order to:

A.     Take the deposition of any person, whether or not a party, for the purpose of discovering the nature, location, status, and extent of the assets of Defendants, and Defendants' affiliates and subsidiaries; the nature and location of documents reflecting the business transactions of Defendants, and Defendants' affiliates and subsidiaries; the location of any premises where Defendants, directly or through any third party, conduct business operations; the Defendants' whereabouts; and/or the applicability of any evidentiary privileges to this action;

and

B.      Demand the production of documents from any person, whether or not a party, relating to the nature, status, and extent of the assets of Defendants, and Defendants' affiliates and subsidiaries; the nature and location of documents reflecting the business transactions of Defendants, and Defendants' affiliates and subsidiaries; the location of any premises where Defendants, directly or through any third party, conduct business operations; the Defendants' whereabouts; and/or the applicability of any evidentiary privileges to this action.

Three (3) days notice shall be deemed sufficient for any such deposition, five (5) days notice shall be deemed sufficient for the production of any such documents, and twenty-four (24) hours notice shall be deemed sufficient for the production of any such documents that are maintained or stored only as electronic data. The provisions of this Section shall apply both to parties to this case and to non-parties. The limitations and conditions set forth in Federal Rules of Civil Procedure 30(a)(2)(A)(ii) and 31(a)(2)(A)(ii) regarding subsequent depositions of an individual shall not apply to depositions taken pursuant to this Section. Any such depositions taken pursuant to this Section shall not be counted toward any limit on the number of depositions under the Federal Rules of Civil Procedure, including those set forth in Federal Rules of Civil Procedure 30(a)(2)(A) and 31(a)(2)(A). Service of discovery upon a party, taken pursuant to this Section, shall be sufficient if made through the means described in Section XIV of this Order.

## XIII.

## DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each of their corporations, subsidiaries, affiliates, partners, divisions, sales entities, successors, assigns, members, officers, directors, independent contractors, agents, servants, attorneys, spouses, representatives, and

any other persons in active concert or participation with them.  Within five (5) calendar days following entry of this Order, Defendants shall file with this Court and serve on Plaintiff an affidavit identifying the name, title, addresses, telephone numbers, date of service, and manner of service of the persons and entities Defendants have served with a copy of this Order in compliance with this provision.

## XIV.

## <u>SERVICE OF THIS ORDER</u>

IT IS FURTHER ORDERED that copies of this Order may be distributed by United States First Class Mail, overnight delivery, facsimile, electronic mail, or personally, by agents or employees of Plaintiff, by agents or employees of the Receiver, by any law enforcement agency, or by private process server, upon any person, financial institution, or other entity that may have possession or control of any property, property right, document, or asset of any Defendant, or that may be subject to any provision of this Order.  Service upon any branch or office of any financial institution or entity shall effect service upon the entire financial institution or entity.

## XV.

## <u>CONSUMER REPORTING AGENCIES</u>

**IT IS FURTHER ORDERED** that, pursuant to Section 604 of the Fair Credit Reporting Act, 15 U.S.C. § 1681b, any consumer reporting agency may furnish a consumer or credit report concerning any Defendant to Plaintiff.

## XVI.

## <u>SERVICE UPON PLAINTIFF</u>

**IT IS FURTHER ORDERED** that Defendants shall serve all pleadings, memoranda, correspondence, affidavits, declarations, or other documents related to this Order or Plaintiff's motion for a preliminary injunction by: (1) e-mail to jwei@ftc.gov,   slevine1@ftc.gov,   or   aaustin2@ftc.gov;   and   (2)   facsimile

transmission to (312) 960-5600, hand delivery to the offices of the Federal Trade Commission, at 230 S. Dearborn Street, Room 3030, Chicago, Illinois 60604, to the attention of Joannie Wei, or overnight shipment through a third-party commercial carrier for delivery at the address listed above.

**XVII.**

**RETENTION OF JURISDICTION**

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

In light of the parties' Stipulation and this Order, the Court **DISCHARGES** the Order to Show Cause Regarding Preliminary Injunction (ECF No. 18 at 28) and **VACATES** the hearing set for October 16, 2017.

**IT IS SO ORDERED**, this 10th day of October, 2017.

_____
GEORGE H. WU, U.S. District Judge for
OTIS D. WRIGHT, II, U.S. District Judge